J-A01015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIF ABDULRUA SINCLAIR | : | |
| | : | |
| Appellant | : | No. 1289 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 30, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001690-2021

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 21, 2023**

Khalif Abdulrua Sinclair (Appellant) appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas following his jury convictions of first-degree murder, persons not to possess firearms, possession of an instrument of crime (PIC), and recklessly endangering another person (REAP).[1] On appeal, Appellant contends: (1) the jury's verdict was against the weight of the evidence; and (2) the trial court erred in denying his request for an involuntary manslaughter jury instruction. For the reasons below, we affirm.

The underlying charges stem from the November 20, 2020, homicide of Abdur Small (the Victim). Earlier that day, Appellant went to Donte Holland's

---

[1] 18 Pa.C.S. §§ 2502(a), 6105(a), 907(a), and 2705, respectively.

home at 502 W. Lafayette St., Norristown, Montgomery County, looking to fight Holland. N.T., 3/28/22, at 98. Holland testified that he "heard banging [and] someone . . . throwing stuff at [the] door." *Id.* Appellant and Holland got into a heated verbal argument about Appellant's ex-girlfriend, Jhanely Rodriguez (Girlfriend), outside the house. *See id.* at 98-99. Appellant was living with Girlfriend next door to Holland, until Appellant was evicted the day before as Girlfriend had obtained a temporary Protection From Abuse Order against him. N.T., 3/29/22, at 100-02. Appellant was arguing with Holland about Holland's prior "one night stand" with Girlfriend. *See* N.T., 3/28/22, at 49; N.T., 3/29/22, at 102.

Christopher Hall, Holland's brother and a resident of 502 W. Lafayette St., witnessed the interaction between Holland and Appellant. Hall testified that Appellant "felt disrespected" and said, "Watch y'all kids, watch ya'll crib." N.T., 3/28/22, at 49. Shawn McCray, Holland's neighbor across the street, recalled that Appellant threatened Holland, stating, "[I]f you don't want to die, don't be here when I get back." *Id.* at 89.

Appellant then called Nafees Smith (Brother), his brother, asking for a gun. N.T., 3/29/22, at 39. Brother did not have one, but picked up Appellant in Norristown and drove him to a friend's house in King of Prussia. *Id.* at 39-40. Brother then drove Appellant back to Norristown. *Id.* at 40. He told Montgomery County Detective Anthony Caso that he parked by an apartment complex "across from the Norristown Transportation Center." *Id.* at 54.

Detective Caso explained there is "a tunnel" in the Transportation Center that connects the apartment complex and the Schuylkill River Trail. *Id.* at 55. Appellant walked through that tunnel to eventually return to 502 W. Lafayette St. *Id.* The Commonwealth presented surveillance footage evidence showing Appellant walking around the block for 15 minutes before he entered the porch. Trial Ct. Op., 8/17/22, at 8.

Around 5:00 p.m., Appellant arrived at 502 W. Lafayette St. The Victim, who was not at the house earlier, and Holland were downstairs. *See* N.T., 3/28/22, at 104. They heard someone trying to get into the house, but the door was locked. *Id.* at 105. Hall testified that he sold drugs at the house, and it was not unusual that strangers would knock at the door. *Id.* at 51. Holland stated that the person at the door said, "[G]ang, gang," which was a "friendly term," and that his name was "Timmy" or "Tommy." *Id.* at 106, 108-09. Holland went upstairs to get Hall and when they looked out the window, they saw a man in a ski mask wearing all black. *Id.* at 106. It was dark outside, and they could not identify the man. *Id.*

As Holland and Hall were walking down the stairs, the front door opened and gun shots were fired. N.T., 3/28/22, at 109-10; *see also id.* at 53. Holland dove under a table to take cover. *Id.* at 100-10. Hall, who was in the living room at this point, fired his own gun at least twice. N.T., 3/28/22 at 54-55. Appellant and the Victim were standing in the doorway area. *Id.* at 54. After the shooting, Hall discovered that the Victim had been shot in the

head. *Id.* at 55. Everyone immediately called the police. *Id.* at 56. One of Hall's stray bullets — not Appellant's — hit the Victim. *See id.* at 55.

A few days after the shooting, Appellant asked Girlfriend to take him to his sister's house in Chester. N.T., 3/29/22, at 104.

The Commonwealth also presented the expert testimony of Detective Terrance Lewis of the Montgomery County Forensic Services Unit, summarized by the trial court as follow:

> [Detective Lewis] recovered two 9-millimeter fired cartridge casings, one right next to the doorway . . . and . . . one . . . a couple of feet . . . from the doorway. A fired projectile was found in the basement area. There were two strike marks, i.e., an area that is believed to have been struck by a bullet, in the living room, and a small projectile was recovered from one of those strike marks. More strike marks were found above the steps, and by the front window in the living room. . . .
>
> Detective Lewis would not know when the strike marks were made, unless there was something else there to indicate when it was struck, such as some debris that was fresh.

Trial Ct. Op. at 12-13 (record citations omitted & paragraph break added). Pertinently, Detective Lewis also testified "the strike mark above the stairs was consistent with a .38 revolver." *Id.* at 20.

Appellant was charged with first-degree murder, persons not to possess firearms, PIC, and REAP. A three-day jury trial commenced on March 28, 2022. On the second day of trial, out of the jury's presence, Appellant's counsel requested an involuntary manslaughter jury instruction. N.T. 3/29/22 at 6. The trial court deferred ruling on the matter until all evidence had been presented. *Id.* at 7.

- 4 -

Appellant did not testify at trial but presented character witnesses; his mother, sister, and friends testified he has a reputation for being a peaceful and law-abiding citizen. *See* N.T., 3/29/22, at 150, 155, 158, 161.

At the close of the evidence, Appellant again requested an involuntary manslaughter jury instruction. N.T., 3/29/22, at 177. In support, Appellant argued the evidence showed his "bullet was shot **over** the head of Donte Holland, causing return fire[,]" and "[Appellant] did not intend to kill him but it was reckless." *Id.* (emphasis added).

On the last day of trial, the trial court denied Appellant's jury instruction request, finding the evidence did not support intent consistent with involuntary manslaughter. N.T., 3/30/22, at 3-4. The court considered the evidence that Appellant had "already expressed his intentions of killing" and intentionally returned to the house armed with a gun, and found the shooting did not "just happen[ ] as a result of total recklessness." *Id.* at 4.

The trial court then gave its final instructions to the jury. Immediately thereafter, the court asked the parties whether they had any additions or corrections. N.T., 3/30/22, at 85. Pertinently, Appellant replied, "No." *Id.*

The jury found Appellant guilty of first-degree murder by transferred intent,[2] persons not to possess firearms, PIC, and REAP. Appellant waived his

_____

[2] The doctrine of transferred intent provides that "the intent to murder may be transferred when the person actually killed is not the intended victim."
*(Footnote Continued Next Page)*

right to a presentence investigation. On the same day, the trial court imposed concurrent sentences of life imprisonment for murder, one to two years for persons not to possess firearms, one to two years for PIC, and one to two years for REAP.

Appellant filed a timely post-sentence motion on April 7, 2022, challenging: (1) the weight of the evidence; and (2) the denial of the involuntary manslaughter jury instruction request. On the same day, the trial court denied the post-sentence motion.

Appellant filed a timely notice of appeal on May 6, 2022, and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Is [Appellant] entitled to an arrest of judgment and/or new trial in the above-captioned matter on the ground that the jury's verdict was against the weight of the evidence since the evidence did not support a finding of specific intent to kill because it showed that [Appellant] merely fired over [the] top of Donte Holland into the ceiling over the staircase of 502 W. Lafayette St[.]?

2. Did the lower court err in denying [Appellant's] request for an involuntary manslaughter jury instruction since evidence existed supporting such a charge, namely, analysis of the crime scene that revealed evidence from which the jury could potentially infer that [Appellant] did not intend to kill Donte Holland, but rather, merely fired over [the] top of Holland into the ceiling over the staircase of 502 W. Lafayette St.?

---

***Commonwealth v. Jones***, 912 A.2d 268, 279 (Pa. 2006), *citing* 18 Pa.C.S. § 303(b)(1).

Appellant's Brief at 3.

First, Appellant asserts that the jury's verdict was against the weight of the evidence because there was no evidence he had a specific intent to kill. Appellant's Brief at 11. We note the relevant standard of review for challenges to the weight of the evidence:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> Moreover, [a]ppellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Miller*, 172 A.3d 632, 642-43 (Pa. Super. 2017) (citations and quotation marks omitted).

> Further, this Court will not find an abuse of discretion
>
> based on a mere error of judgment, but rather . . . when the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable,

or the result of partiality, prejudice, bias or ill-will. Importantly, [this C]ourt should not find that a trial court abused its discretion merely because [we] disagree[ ] with the trial court's conclusion. Indeed, when reviewing the trial court's exercise of discretion, it is improper for [this C]ourt to step[ ] into the shoes of the trial judge and review the evidence *de novo*. In other words, [this C]ourt may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court.

*Commonwealth v. Gill*, 206 A.3d 459, 467 (Pa. 2019) (citations and quotation marks omitted).

Appellant does not challenge his liability under the theory of transferred intent. Instead, he contends the evidence merely showed he "negligently or recklessly fir[ed] a shot over the head [of] Donte Holland." Appellant's Brief at 12. In support, Appellant reasons:

The only evidence of a firearm being fired into the property – the position from which [Appellant] would have been firing – was a strike mark that entered the ceiling of the first floor at the top of the stairs leading to the second floor. Such a shot, however, would have been well over the heads of Donte Holland and the . . . other occupants and thus, was inconsistent with the intent to kill. . . .

*Id.* Appellant avers that the jury's finding of a specific intent to kill "shocks the [conscience]." *Id.* We conclude no relief is due.

We note:

In order to find a defendant to be guilty of first-degree murder, a jury must find: (1) a specific intent to kill; and (2) malice. Pursuant to the doctrine of transferred intent, the intent to murder may be transferred where the person actually killed is not the intended victim. . . .

*Jones*, 912 A.2d at 279, *citing* 18 Pa.C.S. § 303(b).

["S]pecific intent to kill can be inferred from the circumstances surrounding an unlawful killing. Because a person generally intends the consequences of his act, specific intent to kill may be inferred from the fact that the accused used a deadly weapon to inflict injury to a vital part of the victim's body."

***Commonwealth v. Geathers***, 847 A.2d 730, 737 (Pa. Super. 2004).

In denying relief, the trial court reasoned:

[Appellant] wanted the jury to believe that the strike mark above the steps was a strike mark from the day of the murder, which was a fact the jury had to determine[,] and that it was made by [Appellant's] firearm, which [he] claimed was a revolver, which was another fact the jury had to determine. . . .

Trial Ct. Op. at 20. However, "the jury did not credit [this] theory of the evidence," but instead "credit the evidence of [Appellant's] specific intent to kill Holland." ***Id.*** The trial court cited the following evidence:

[Appellant] threatened to return to Holland's house after the verbal argument in order to kill him; [Appellant] did in fact return with a firearm; [and] he lied in wait for Holland[,] surreptitiously tried to gain entry into the home by pretending he was someone friendly to the home's residents[,] and when the door opened and Holland was in his sight he shot off his firearm. This evidence was demonstrated and corroborated through several witnesses and video surveillance. . . .

***Id.*** at 20-21. Thus, the trial court determined that the verdict was supported by the weight of the evidence. ***Id.*** at 21.

Appellant does not address or dispute the trial court's reasoning. He merely focuses on the evidence of the strike mark at the top of the staircase. Appellant's Brief at 12. Appellant ignores the trial court's discussion of the evidence that he: threatened Holland during an argument earlier in the day; asked his brother for a gun and when Brother did not have one, they drove to

a friend's house to retrieve one; rode back with the gun and had Brother park away from the house; walked around the house for 15 minutes before approaching the front door; disguised himself with a ski mask; pretended to be someone else when he tried to gain entry to the house; and finally, shot in Holland's direction once the door was opened. Appellant also ignores the trial court's discussion that the expert witness testified he could not determine when the strike mark was made.

We emphasize the jury was free to consider all the evidence presented at trial. *See Miller*, 172 A.3d at 642-43. Indeed, a jury "who hears witness testimony first-hand is able to take into account not only the words that are spoken and transcribed, but the witnesses' demeanor, tone of voice, mannerisms, and the like." *Commonwealth v. Johnson*, 231 A.3d 807, 818 (Pa. 2020). Here, the jury considered all the testimony and video surveillance footage presented. We decline to substitute our credibility determinations for that of the jury. *See Gill*, 206 A.3d at 467; *Miller*, 172 A.3d at 642-43. Therefore, we affirm the trial court's determination that the weight of the evidence supports the jury's verdict.

Second, Appellant challenges the trial court's denial of his request for an involuntary manslaughter jury instruction. Appellant's Brief at 13. Appellant contends that the court "employed an incorrect standard of review" because it did not view the evidence in the light most favorable to him. *Id.* at 15. He argues:

In its 1925(a) opinion, the trial court . . . states, "[t]here was no direct evidence suggesting [the strike mark at the top of the stairs] was from his firearm or whether that strike mark was even made on the night of the murder. It was a defense theory, not evidence."

This holding is incorrect [because] it ignores that in addressing the propriety of a jury instruction requested by the defense, the court must[ ] view the evidence in the light most favorable to the defendant. . . .

*Id.* at 15-16 (citations and some quotation marks omitted). Appellant insists the jury could have inferred, from the evidence of the strike mark at the top of the staircase, that he did not intend to kill Holland. *Id.* at 16. We determine this issue is waived.

When reviewing a challenge to jury instructions, this Court's standard of review is well-settled:

the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Fletcher*, 986 A.2d 759, 792 (Pa. 2009). However, in order to preserve an objection to jury instructions, a party must make a specific objection after the trial court reads the instructions, before jury retires to deliberate. *Commonwealth v. Cosby*, 224 A.3d 372, 421 (Pa. Super. 2019), *vacated on other grounds*, 252 A.3d 1092 (Pa. 2021).

Here, although Appellant requested a jury instruction on involuntary manslaughter, he did not object to the jury instructions after they were given to the jury. *See* N.T., 3/30/22, at 85. The court asked both parties if there were "any additions or corrections to [the] instructions," and both parties said, "[N]o." *Id.* As a result, the jury instruction issue is waived for our review. *See Cosby*, 224 A.3d at 421.

Moreover, even if Appellant had properly objected to the jury instruction, we would agree that no relief is due. Involuntary manslaughter is

> a killing that occurs when, as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, an individual causes the death of another person. An instruction on involuntary manslaughter is not required unless it has been made an issue in the case and the facts would support such a verdict.

*Fletcher*, 986 A.2d at 790 (quotation marks omitted), *citing*, *inter alia*, 18 Pa.C.S. § 2504(a).

In this case, the trial court explained that "the facts developed at trial did not reasonably support a finding of involuntary manslaughter." Trial Ct. Op. at 24. We agree. As discussed earlier, Appellant threated Holland during an argument, returned a few hours later with a gun, wearing a ski mask; attempted to gain entry to the house, and shot in Holland's direction once the door opened. The trial court found the evidence was inconsistent with involuntary manslaughter or recklessness. Again, Appellant cites only the evidence that supports his argument and disregards all the surrounding facts that the trial court discussed in its opinion.

- 12 -

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/21/2023