J-S28043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                              :            PENNSYLVANIA
                              :
        v.                    :
                              :
                              :
JOSHUA TYLER BOOHER          :
                              :
        Appellant             :          No. 1245 MDA 2024

Appeal from the PCRA Order Entered August 9, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000970-2018

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                 **FILED: NOVEMBER 14, 2025**

Appellant, Joshua Tyler Booher, appeals from the order entered in the Lebanon County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

A prior panel of this Court set forth the relevant facts of this case as follows:

> As of April 21, 2018, Appellant was residing with [two-year-old] L.B.'s father, Seth Buck ("Buck").  The two had been in a romantic relationship since November 2017 and had been residing together since January 2018.  Buck and L.B.'s mother … had a week-on/week-off custody arrangement for their son, L.B.  On the date L.B. sustained burns, Buck had custody of the child.
>
> On the night of April 21, 2018, Buck gave his son a bath and put him to bed wearing a clean diaper, t-shirt, and pants.  As Buck dried L.B. off, he did not notice any marks, bruises,

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

or other injuries on L.B.

Buck left the apartment to buy some hair products at Walmart, an errand that took approximately 30 to 40 minutes, including travel time. L.B. was asleep when Buck left. Video from the store, along with receipts for his purchases, confirmed the time and purchases Buck made.

When Buck returned from Walmart, he saw Appellant running toward the laundry facility across the street from the apartment. When Appellant returned to the apartment, the two were talking when they heard L.B. "fussing." Buck believed L.B. simply woke up and would go back to sleep. Shortly thereafter, however, L.B. began to make louder noises, prompting Buck to check on him. When Buck entered L.B.'s room, L.B. was holding his hands out to Buck while saying, "Dada, look." Buck "just remember[ed] his skin—his skin being really red and loose. It was just dripping off his arms, his hands. He was just shaking."

Buck said that he panicked, tearing through things in L.B.'s room, trying to figure out what L.B. got into. He checked the burners on the stove in the kitchen and checked the radiators, but they were cold. He got frozen vegetables from the freezer to put on L.B.'s arms and called his own mother. Meanwhile, he kept asking Appellant what happened. Appellant kept saying he did not know, but he also told Buck to calm down and said, "[W]e just need to get our stories straight[,]" a comment Buck acknowledged went "way over my head" at the time.

L.B. was taken to a nearby hospital but was subsequently transferred to Lehigh Valley Reilly Children's Hospital ("Lehigh Valley") for treatment of second and third-degree burns to his hands and forearms. The medical records also documented bruising on his right shoulder, on his mid-back on the left and right sides, above his left eyebrow, above his left and right eyelids, on both cheeks, on his earlobe, and on his left leg. Buck's mother explained that the bruises began to appear when they were at the hospital and had not been visible when they were still at the apartment. It also was noted that dirt and pine needles were found in L.B.'s diaper.

> L.B. remained hospitalized at Lehigh Valley for three weeks. His medical treatment was extensive and involved several surgeries and multiple therapy sessions. The treatment was ongoing at the time of trial and was anticipated to continue for years to come.

***Commonwealth v. Booher***, No. 1426 MDA 2021, unpublished memorandum at 2-4 (Pa.Super. filed June 16, 2022) (record citations omitted).

Police arrested Appellant and charged him with multiple offenses related to L.B.'s injuries. In 2020, Appellant proceeded to a jury trial with counsel ("first trial counsel"), which ended in a mistrial. Appellant's retrial commenced on February 23, 2021. Significantly, new counsel ("second trial counsel") represented Appellant at that time. On February 24, 2021, the jury convicted Appellant of aggravated assault, endangering the welfare of a child, simple assault, and recklessly endangering another person.[2] On May 19, 2021, the trial court sentenced Appellant to an aggregate term of sixty-six (66) months to twelve (12) years' incarceration. This Court affirmed the judgment of sentence on June 16, 2022, and Appellant did not seek further review. ***See Booher, supra***.

Appellant timely filed a counseled PCRA petition on June 16, 2023. In it, Appellant alleged that second trial counsel was ineffective for: (1) failing to argue that Appellant lacked the requisite *mens rea* for aggravated assault; (2) failing to call a burn expert to negate the *mens rea* for aggravated assault;

---

[2] 18 Pa.C.S.A. §§ 2702(a)(1), 4304(a)(1), 2701(a)(1), and 2705, respectively.

and (3) failing to show that Appellant suffered prejudice where the court sentenced him for aggravated assault instead of a lesser offense. On November 27, 2023, the PCRA court conducted an evidentiary hearing. At that time, the court received testimony from second trial counsel.[3] By opinion and order entered August 9, 2024, the court denied PCRA relief.

Appellant timely filed a notice of appeal on August 27, 2024. On August 29, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on September 5, 2024.

Appellant now raises four issues for this Court's review:

> The petition should be deemed timely filed.[4]
>
> Trial counsel was ineffective for failing to argue at trial that [Appellant] did not have the requisite *mens rea* for the aggravated assault charge.
>
> Trial counsel was ineffective for failing to call a burn expert at trial to negate the *mens rea* of the aggravated assault charge.

---

[3] Second trial counsel testified that Appellant's defense hinged on an argument that L.B. suffered accidental burns. Specifically, Appellant theorized that: 1) the apartment's plumbing system used a boiler for hot water; 2) the water temperature could instantly rise to a dangerous temperature; and 3) unbeknownst to Appellant, the water temperature became unsafe while Appellant was washing L.B.'s hands on the date at issue. (**See** N.T. PCRA Hearing, 11/27/23, at 12).

[4] Although Appellant included this issue in his statement of questions presented, the record makes clear that he timely filed the current PCRA petition. Further, the argument section of Appellant's brief does not include any type of timeliness analysis. Thus, we give this issue no further attention.

Trial counsel was ineffective for failing to adequately show [Appellant] was prejudiced at sentencing by the aggravated assault conviction versus being sentenced to the other crimes.

(Appellant's Brief at 4).

Appellant's issues are related, and we address them together. Appellant maintains that second trial counsel was ineffective for failing to negate the *mens rea* for the offense of aggravated assault. Appellant argues that second trial counsel did not present an expert witness to establish "that the conditions in the apartment could have resulted in the burns the child suffered and that those burns would not have been immediately obvious to [Appellant]." (*Id.* at 15). Appellant posits that second trial counsel "had a duty to know of the [expert] witness," where an expert's potential testimony "involved the central issues in the case." (*Id.* at 15-16). Even if expert testimony was not completely exculpatory, Appellant contends "it would have undermined the Commonwealth's attempt to show malice, and thus [Appellant] was prejudiced by the error." (*Id.* at 15). Appellant adds:

[T]he jury had to believe the Commonwealth's expert, and her opinion that [Appellant] would have understood that he was causing serious injury to the child. But had the jury heard from a contrary expert, who would have established that the child's injuries wouldn't have been immediately obvious, and thus could have been the result of a tragic, even reckless, accident, then the jury would likely have rejected the [aggravated assault] charge.

(*Id.* at 17).

Appellant also asserts that second trial counsel's failure to call an expert

- 5 -

witness resulted in a longer sentence. Appellant claims that his "guideline range would have been far lower had he been found not guilty of aggravated assault and guilty of the remaining charges." (**Id.** at 18). Complicating matters further, Appellant complains that second trial counsel had almost no experience handling serious felony or child abuse cases, and counsel failed to seek appropriate guidance from a supervising attorney. Based upon the foregoing, Appellant concludes that second trial counsel was ineffective, and that the PCRA court erred in denying relief. We disagree.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

> Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts.

**Beatty, supra** at 961 (internal citations and quotation marks omitted).

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit." *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his

client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 33, 807 A.2d 872, 883 (2002)).

For claims of ineffectiveness based upon counsel's failure to call a witness:

> A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness. In establishing

- 8 -

whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witnesses' testimony prejudiced petitioner and denied him a fair trial.

*Commonwealth v. Cox*, 603 Pa. 223, 267-68, 983 A.2d 666, 693 (2009). A petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 597 Pa. 402, 441, 951 A.2d 1110, 1134 (2008).

Additionally, the Crimes Code defines aggravated assault, in relevant part, as follows:

**§ 2702.  Aggravated assault**

**(a)      Offense defined.**—A person is guilty of aggravated assault if he:

(1)      attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).

"To prevail on a theory of recklessness, the Commonwealth must show an assailant's recklessness rose to the level of malice, a crucial element to sustain a conviction for aggravated assault."[5] *Commonwealth v. Bruce*, 916 A.2d 657, 664 (Pa.Super. 2007) (internal citation omitted).

---

[5] On direct appeal, this Court observed "the fact that L.B. sustained serious injury is not contested[.]" *Booher, supra* at 9. Thus, "the Commonwealth had the burden of proving that [Appellant] acted recklessly under

*(Footnote Continued Next Page)*

> Malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

*Id.* (internal citations and quotations marks omitted).

Instantly, the PCRA court evaluated the record and determined that counsel repeatedly challenged the Commonwealth's evidence regarding the *mens rea* for aggravated assault:

> At the PCRA hearing, [second] trial counsel explained that he focused on [Appellant's] lack of intent during the trial. He confirmed that he argued to the jury that [Appellant] did not have the requisite *mens rea* as the accident happened so quickly that [Appellant] had no ability to form intent. Our review of the record indicates that this is true. During the jury trial, [second] trial counsel addressed the issue of [Appellant's] *mens rea* during his opening statement. During questioning, he consistently attempted to characterize the incident as accidental, referring to the possibility of a sudden surge in water temperature. He thoroughly questioned [the Commonwealth's expert,] Dr. Esernio-Jenssen about the possibility of the injuries being accidentally inflicted in accordance with [Appellant's] version of the incident during cross examination. During [Appellant's] testimony, [second] trial counsel elicited

---

circumstances manifesting an extreme indifference to the value of human life."
*Id.* (quoting *Commonwealth v. Hlatky*, 626 A.2d 575, 581 (Pa.Super. 1993), *appeal denied*, 537 Pa. 663, 644 A.2d 1200 (1994)).

testimony to show that [Appellant] did not act with intent or malice and that this was nothing more than a tragic accident. [Second] trial counsel continued this strategy during his closing argument when he argued that "the child was already burned by the time [Appellant] realized that the water was too hot."

\* \* \*

[Second] trial counsel continued to challenge [Appellant's] conviction for aggravated assault based on assertions that [Appellant] did not possess the requisite *mens rea* in post-sentence motions and in his appeal to the Superior Court; however, these were likewise unsuccessful based on the evidence presented at trial.

(PCRA Court Opinion, filed 8/9/24, at 7-9) (record citations omitted).

Regarding second trial counsel's decision not to present an expert witness, the PCRA court observed:

At the PCRA hearing, [second] trial counsel testified that after discussing the facts of the case with [Appellant], he contacted the attorney who had represented [Appellant] in the trial that had ended in a mistrial. He learned that [Appellant's] prior counsel had conferred with an emergency room doctor who could not give an opinion that the injuries were accidental.

[Second] trial counsel noted that he had the benefit of knowing the substance of Dr. Esernio-Jenssen's testimony as she had testified in the previous trial that had ended in a mistrial and he had reviewed the transcript of her testimony. Because [second] trial counsel did not feel the emergency room doctor had sufficient background in burns, he contacted Dr. Garcia, the burn director for the pediatric unit of Johns Hopkins medical facility. He sent the victim's medical records to Dr. Garcia for review and related [Appellant's] version of how the injuries occurred. Dr. Garcia reached the same conclusion as Dr. Esernio-Jenssen—that the burns had been caused by submersion. Dr. Garcia opined that [Appellant's] version was an unlikely scenario and did not agree that the injuries could have been

inflicted in this manner. [Second] trial counsel sent Appellant an email on November 16, 2020, explaining Dr. Garcia's opinion.

[Second] trial counsel had several oral discussions regarding Dr. Garcia's opinion with [Appellant]. [Appellant] indicated that he understood and accepted that they would not be presenting a medical expert. At that point, [Appellant] and [second] trial counsel agreed to proceed on the theory that the incident was an accident and occurred so quickly that [Appellant] could not have formed the requisite *mens rea*. On January 14, 2021, [Appellant] replied to an email sent by [second] trial counsel which expressed his understanding: "Is it worth refocusing our efforts and maybe not even needing to find a medical witness in my defense based on the defenses of these articles?" [Second] trial counsel confirmed that he had several oral conversations with [Appellant] about abandoning the search for an expert and [Appellant] did not ask him to continue the search. [Appellant] signed a certificate of trial readiness indicating that the case was ready to proceed to trial. [Second] trial counsel indicated that, had [Appellant] made such a request, he would have sought continuance of the trial date and continued to search for an expert who would offer an opinion in support of [Appellant's] theory. He believed that both he and [Appellant] felt that, after three doctors would not say that the acts were accidental, a continued search for an expert would be a fruitless endeavor.

[Second] trial counsel explained that once the defense strategy had refocused, he and [Appellant] proceeded with a plumbing expert who testified at the jury trial. [Second] trial counsel explained that on cross-examination, Dr. Esernio-Jenssen testified that the burns would have occurred instantly. The plumbing expert indicated that the plumbing system in the building where the incident occurred had been set up incorrectly so that the boiler could have caused the water temperature to rapidly rise to an unsafe temperature. [Second] trial counsel believed that this testimony, in conjunction with Dr. Esernio-Jenssen's testimony, would lend credence to the theory that the temperature rose very quickly while [Appellant] was washing the victim's hands and that the burns occurred

- 12 -

instantly due to the fact of the child's skin being very thin.

The evidence adduced at the PCRA hearing does not support [Appellant's] claim that [second] trial counsel was ineffective for failing to procure a medical expert; there was in fact no expert available to testify in accordance with his version of how the injuries were inflicted. After considering the opinions of three different doctors—the emergency room physician contacted by prior counsel, the Commonwealth's expert, Dr. Esernio-Jenssen, and Dr. Garcia, [second] trial counsel reached the conclusion that he would be unable to locate a medical expert who would testify that the injuries were accidental and that it was a better trial strategy to focus on the sudden rise in water temperature to show [Appellant's] lack of the *mens rea* necessary for a conviction of aggravated assault. We believe [second] trial counsel was justified in reaching this conclusion and in pursuing this trial strategy under these circumstances.

(***Id.*** at 10-13) (record citations omitted).

Finally, as to Appellant's claim that counsel's ineffectiveness resulted in

a longer sentence, the PCRA court found:

It is true that [Appellant] would have received a lesser sentence had he not been convicted of aggravated assault. However, we cannot fault [second] trial counsel for failing to locate a medical expert who would render an opinion and testify in accordance with [Appellant's] version of how the child's injuries were inflicted.

\* \* \*

At sentencing, the court discussed the issue of recklessness with regard to the level of culpability necessary for a conviction of aggravated assault. We found numerous factors which warranted a sentence in the aggravated range. The Superior Court found no reason to disturb that sentence.

(***Id.*** at 14).

Importantly, the PCRA court credited second trial counsel's testimony

- 13 -

from the evidentiary hearing. Considering second trial counsel's credible testimony, the court concluded that Appellant failed to satisfy the three-part test for ineffectiveness. Based upon our review of the record, the evidence adduced at PCRA hearing supported the court's conclusion. *See Beatty, supra*. We emphasize that second trial counsel's testimony demonstrated that he challenged the Commonwealth's evidence regarding the *mens rea* for aggravated assault. (*See* N.T. PCRA Hearing, 11/27/23, at 15). Moreover, second trial counsel attempted to locate an expert to provide favorable testimony. (*Id.* at 10-11). After his attempts were thwarted, second trial counsel **and** Appellant decided to change course and proceed on a theory that the incident was an accident. (*Id.* at 11). On this record, we decline Appellant's invitation to brand counsel's trial strategy as unreasonable. We also cannot say that second trial counsel's purported lack of experience resulted in prejudice to Appellant. *See Spotz, supra*. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/14/2025

- 14 -