**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**James GEATHERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 12, 2004.
Filed April 12, 2004.

Daniel M. Rendine, Philadelphia, for appellant.

Hugh J. Burns, Assistant District Attorney, for Commonwealth, appellee.

Before: MUSMANNO, LALLY-GREEN, and BECK, JJ.

OPINION BY LALLY-GREEN, J.:

¶ 1 Appellant, James Geathers, appeals from the order entered on February 25, 2003, denying his first petition under the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–9546. We affirm.

¶ 2 On April 8, 1999, following a jury trial, Appellant was convicted of aggravated assault, attempted murder, and various weapons offenses. This Court, on direct appeal, summarized the facts of the case as follows:

The convictions resulted from an incident that occurred on the evening of September 13, 1998. Following an argument earlier in the evening, Appellant chased the victim and fired a gun at him multiple times. One of the bullets grazed the victim's scalp, leaving a permanent scar. The gun used in the incident was never recovered, and the only

physical evidence presented at trial were two shell casings from a 9mm weapon.

At trial, the victim and Appellant's former girlfriend, Shokur Cooper, each positively identified Appellant as the assailant. Following his conviction at a jury trial, Appellant was sentenced to a term of fourteen years and one month to thirty-seven years' imprisonment.

*Commonwealth v. Geathers,* 764 A.2d 1122 (Pa.Super.2000) (unpublished memorandum) at 1–2. Appellant was represented by Maryann Swift, Esq., at trial and on direct appeal. On direct appeal, Appellant argued that the trial court erred by allowing a witness to testify that Appellant had a propensity to carry a 9mm handgun. This Court affirmed the judgment of sentence on August 10, 2000.

¶ 3 On August 14, 2001, Appellant filed a PCRA petition. New counsel (Daniel A. Rendine, Esq.) filed an amended PCRA petition, raising both issues that he now raises on appeal. On February 25, 2003, the PCRA court dismissed the petition without a hearing. This appeal followed.

¶ 4 On May 28, 2003, the PCRA court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925. Appellant raised one issue:

1.  Whether trial counsel was ineffective for failing to object to the trial court's charge on attempted murder in so far as the charge in question did not advise the jury that in order to convict the petitioner of attempted murder it had to find that he acted with a specific intent to kill. Whether former counsel, trial counsel/appellate counsel was ineffective.

Docket Entry 20.

¶ 5 Appellant raises two issues on appeal:

I. Whether trial counsel was ineffective for failing to object to the trial court's charge on attempted murder as the charge did not advise the jury that in order to convict the defendant it had to find that he acted with a specific intent to kill.

II. Whether the trial court deprived Appellant's constitutional right of a fair trial under the United States and Pennsylvania Constitutions when she instructed the jury on two occasions that petitioner had entered a plea of guilty [rather] than not guilty and whether prior counsel was ineffective for not raising this issue on appeal?

Appellant's Supplemental Brief at 3.

■ ¶ 6 We will address Appellant's second issue first. Where the court orders an appellant to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925, any issues not raised in that statement are waived. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 308–309 (1998). The record reflects that Appellant's second issue on appeal was not set forth in the Concise Statement, and the PCRA court did not issue a Rule 1925 opinion addressing that issue. Accordingly, it is waived.

■ ¶ 7 We now turn to Appellant's first issue. Appellant claims that Attorney Swift was ineffective both at trial and on direct appeal when she failed to object to an erroneous jury charge. Specifically, Appellant argues that the charge on attempted murder was inaccurate and confusing because it did not require a finding of specific intent to kill.

¶ 8 Our standard of review is as follows. When reviewing an order denying PCRA relief, we must determine whether the PCRA court's determination is supported by the record and is free from legal error.

*Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582, 586 (1999). To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* at 587. We presume counsel is effective and place upon Appellant the burden of proving otherwise. *Commonwealth v. Howard*, 749 A.2d 941, 949 (Pa.Super.2000). Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. *Id.* at 957.

■ ¶ 9 Our Supreme Court has set forth the following standards relating to jury instructions:

A trial court has wide discretion in phrasing jury instructions. When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle.

*Commonwealth v. Ragan*, 560 Pa. 106, 743 A.2d 390, 397–398 (1999) (citations omitted). Trial counsel will not be held ineffective for failure to object to an erroneous jury instruction unless the petitioner can establish prejudice: *i.e.*, if counsel had objected to the charge, there is a reasonable probability that the result at trial would have been different. *Commonwealth v.*

*McGill,* 574 Pa. 574, 832 A.2d 1014, 1023 (2003).

¶ 10 For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill. *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20, 24 (1994); *Commonwealth v. Packard,* 767 A.2d 1068, 1071 (Pa.Super.2001), *appeal denied,* 566 Pa. 660, 782 A.2d 544 (2001). This Court explained the reasoning behind this requirement in 1983, as follows:

> The question squarely presented to us is whether someone can attempt to commit murder of the second or third degree. We think not. A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901. Murder of the second or third degree occurs where the killing of the victim is the unintentional result of a criminal act. Thus, an attempt to commit second or third degree murder would seem to require proof that a defendant intended to perpetrate an unintentional killing—which is logically impossible. While a person who only intends to commit a felony may be guilty of second degree murder if a killing results, and a person who only intends to inflict bodily harm may be guilty of third degree murder if a killing results; it does not follow that those persons would be guilty of attempted murder if a killing did not occur. They would not be guilty of attempted murder because they did not intend to commit murder—they only intended to commit a felony or to commit bodily harm.

> LaFave and Scott have explained in their treatise on criminal law why it is necessary to prove an intent to kill in

order to sustain a charge of attempted murder:

> Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, and C have each taken the life of another, A acting with intent to kill, B with an intent to do serious bodily injury, and C with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm or that he acted in reckless disregard for human life. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (*i.e.,* the death of another).

> LaFave and Scott, Handbook on Criminal Law, § 59 at 428–29 (1972) (footnotes omitted). . . .

> We hold that in order to convict a person of attempted murder, an intent to kill must be shown, and that a defendant charged with attempted murder is entitled to a jury instruction to that effect.

*Commonwealth v. Griffin,* 310 Pa.Super. 39, 456 A.2d 171, 177–178 (1983). In other words, "there simply is no such crime as attempted second or third degree murder." *Commonwealth v. Williams,* 730 A.2d 507, 511 (Pa.Super.1999).

¶ 11 With these standards in mind, we now turn to the jury charge at issue. The trial court initially charged the jury as follows:

For the purposes of this case, the crime of attempted murder, the charge which the defendant is charged with having attempted, may be defined as follows: A person who attempts to kill another human being intentionally and with malice, or he attempts to kill another human being with malice is guilty of the crime of attempted murder. In order to find the defendant guilty of attempted murder, you must be satisfied that the following three elements have been proven beyond a reasonable doubt:

First, that the defendant did some or certain acts. That is, pursued the complaining witness, Rashine Frazier, shot at him several times, and did shoot him in the head. Second, that the defendant did these acts with the intent to commit the crime of murder. And three, that the act constituted a substantial step toward the commission of that crime, or the acts constituted a substantial step toward the commission of that crime.

A person "intends" to commit the crime of murder if he intends to take the life of another human being. A person cannot be guilty of an attempt to commit a crime, unless he does an act which constitutes a substantial step toward the commission of that crime. An act is a substantial step if it is a major step toward the commission of the crime, and also strongly corroborates the injuries believed [sic] that the person, at the time, that he did the acts, have a firm intent to commit the crime.

N.T., 4/7/99, at 89–90. After providing additional instructions on other aspects of the case, the court allowed the jury to retire and deliberate.

¶ 12 The jury returned with a question for the court: "Could you give us the definition of attempted murder by law?" *Id.* at 101. The court then further instructed the jury as follows:

For the purposes of this case, the crime of attempted murder, the crime which the defendant is charged with attempting, may be defined as follows: A person who attempts to kill another human being intentionally with malice, or attempts to kill another human being with malice is guilty of the crime of attempted murder. In order to find the defendant guilty of attempted murder, you must be satisfied that the following three elements have been proven beyond a reasonable doubt.

First, that the defendant did, some act. That is, he pursued the complaining witness, Rashine Frazier. Shot at him several times, and did shoot him in the head. Second, that the defendant did act with intent to commit the crime of murder.

And third, that the act constituted a substantial step toward the commission of that crime. A person "intends" to commit the crime of murder if he intends to take the life of another human being. A person cannot be guilty of an attempt to commit a crime unless he has a firm intent to commit that crime. If he has not definitely made up his mind, if his purpose is uncertain or wavering, he lacks the kind of intent which is required for an attempt.

A person cannot be guilty of an attempt to commit a crime unless he does an act which constitutes a substantial step toward the commission of that crime. An act is a substantial step if it is a major step toward the commission of the crime, and also strongly corroborates the jury's belief that the person, at the time he did the act or acts, had a firm intent to commit that crime. If you are satisfied that the three elements of attempted murder have been proven beyond a reasonable doubt, you should find the defendant guilty. Otherwise, you

must find the defendant not guilty of this crime.

Now, while we were preparing an answer to your question, we thought it would be helpful to give you the following information. The word "malice," as I am using it, has a special legal meaning. It does not mean simply hatred, spite or ill will. Malice is a shorthand way of referring to three different mental states that the law regards as being bad enough to make a killing murder.

Thus, a killing is with malice if the killer acts with first, an intent to kill or second, an intent to inflict serious bodily harm, or third, a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating an unjustified disregard for the probability of death, or great bodily harm and an indifference to the value of human life, a conscious disregard of an unjustified and extremely high risk that his actions might cause death or serious bodily harm. When deciding whether the defendant acting [sic] with malice, you should consider all of the evidence regarding his words, conduct and the attending circumstances that may show his state of mind. If you believe that the defendant intentionally used a deadly weapon on a vital part of Rashine Frazier's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant acted with malice.

*Id.* at 101–104.

¶ 13 After reviewing the charge in its entirety, we conclude that it is legally erroneous. Again, Pennsylvania case law holds that malice is not an element of attempted murder. *Griffin; Williams.* An "attempted malicious killing" is not recognized in Pennsylvania. *Id.* Rather, the only way to establish attempted murder is to establish that the accused harbored a **more** culpable mental state than malice: namely, specific intent to kill. *Id.*

¶ 14 The record reflects that the trial court's initial charge incorrectly suggested to the jury that malice was sufficient to prove attempted murder. N.T., 4/7/99, at 89–90 ("A person who attempts to kill another human being intentionally and with malice, **or he attempts to kill another human being with malice** is guilty of the crime of attempted murder.") (emphasis added). While other portions of the initial charge do adequately state the controlling law,[1] we conclude that the initial charge was confusing and inaccurate as a whole.

¶ 15 Any doubts about the impropriety of the charge as a whole are dispelled by the court's inaccurate supplemental charge. This supplemental charge was issued after the jury asked for a renewed instruction on the elements of attempted murder. The supplemental charge added an extensive discussion of malice as a culpable mental state for murder. This discussion was irrelevant, because Appellant was charged with attempted murder rather than murder itself. The charge did not adequately convey the message that attempted murder requires a specific intent to kill. Rather, the supplemental charge conveyed the distinct impression that a person could be found guilty of attempted murder with a finding of malice. The court never corrected this charge, and indeed it was the last charge that the jury heard. As a result, we hold that the court's charge as a whole was legally inaccurate. Appellant's claim has arguable merit.

---

**1.** *See,* N.T., 4/7/99, at 89–90 ("A person 'intends' to commit the crime of murder if he intends to take the life of another human being.")

¶ 16 We need not address the question of whether counsel had a reasonable basis for her failure to object to the charge,[2] because we ultimately conclude that Appellant was not prejudiced. As this Court noted on direct appeal, the evidence against Appellant was overwhelming. The Commonwealth presented evidence that on the night in question, Appellant and the victim had a verbal altercation relating to the victim's girlfriend, Shokur Cooper. After the situation calmed down, Appellant left the scene and returned about 10–15 minutes later with a gun and three or four friends. Appellant shot at the victim from a distance of about 10 feet, but missed. The victim then ran behind a parked car, and Appellant shot at the victim two more times over the car. The victim then ran down the street, and Appellant shot at the victim again. This shot struck the victim on the left side of the head. The victim continued running, and encountered Cooper's Aunt Debbie on the street. The victim yelled to Debbie that "Jay shot me." Debbie then directed the victim to run to her house. He did so, and quickly thereafter was transported to the hospital. The victim was admitted to the hospital with a gunshot wound in the head.

¶ 17 Shokur Cooper positively identified Appellant from a photo array and at trial. She testified that she had previously dated Appellant, and that she tried to stop Appellant from shooting at the victim on the night in question by grabbing Appellant's arm. Appellant responded by pushing her away and continuing to pursue the victim down the street. Appellant even reloaded his gun during his pursuit.

¶ 18 From this evidence, the jury could easily conclude that Appellant had the specific intent to kill. He pursued the victim, shot at him multiple times, reloaded his gun in doing so, and ignored entreaties to stop the shooting. The attack was unprovoked, and took place after a significant "cooling down" period following a verbal altercation.

¶ 19 Finally, and most importantly, Appellant used a deadly weapon to inflict injury to a vital part of the victim's body (*i.e.*, the head). "A specific intent to kill can be inferred from the circumstances surrounding an unlawful killing. Because a person generally intends the consequences of his act, specific intent to kill may be inferred from the fact that the accused used a deadly weapon to inflict injury to a vital part of the victim's body." *Commonwealth v. Sattazahn*, 428 Pa.Super. 413, 631 A.2d 597, 602 (1993), *appeal dismissed*, 539 Pa. 270, 652 A.2d 293 (1994). All of this evidence is more than sufficient from which a jury could conclude that Appellant harbored a specific intent to kill.[3]

¶ 20 After reviewing the record, we see no reasonable probability that the result at trial would have been different if Appellant's counsel had objected and a proper jury instruction had been substituted. In short, Appellant has failed to demonstrate prejudice. Thus, Appellant has failed to establish ineffectiveness of Attorney Swift at trial counsel (and, by extension, ineffectiveness on appeal). *McGill.* We see no abuse of discretion or error of law in the

---

2. Our Supreme Court has cautioned against speculating about the reasons for counsel's actions in the absence of an evidentiary hearing, except in the clearest of cases. *McGill*, 832 A.2d at 1023.

3. Appellant did not testify on his own behalf, and presented a weak defense that the evidence was too confusing and inconsistent to form proof beyond a reasonable doubt.

PCRA court's decision to dismiss Appellant's petition without a hearing.

¶ 21 Order affirmed.