J-S76035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :                 PENNSYLVANIA
                                     :
            v.                      :
                                     :
                                   :
PATRICK DUGAN                  :
                                   :
            Appellant         :      No. 768 WDA 2018

Appeal from the Judgment of Sentence April 24, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000817-2016

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:              **FILED DECEMBER 24, 2018**

Patrick Dugan (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of two counts of attempted homicide,[1] 16 counts each of aggravated assault and recklessly endangering another person (REAP),[2] and one count of discharging a firearm into an occupied structure.[3]  Appellant challenges the sufficiency of the evidence.[4]  Upon review, we affirm.

At approximately 5:00 p.m. on January 26, 2016, Roy Friend called Zach

---

[1] 18 Pa.C.S.A. §§ 901(a), 2501(a).

[2] 18 Pa.C.S.A. §§ 2702(a)(1), 2705.

[3] 18 Pa.C.S.A. § 2707.1(a).

[4] The Commonwealth has not filed a brief.

Helisek to buy approximately $1,000 worth of marijuana. N.T. Trial, 2/1/18, at 115-116 (testimony of Helisek). Helisek did not have the marijuana, but called Appellant, who did. *Id.* at 116-117. Helisek drove his car, a blue four-door sedan, picked up Christian Cicconi, and together they picked up Appellant from his house in Uniontown. *Id.* at 118-119. Helisek acknowledged at trial that earlier that day, he drank alcohol and smoked marijuana. *Id.* at 141. The trial court summarized:

> Mr. Helisek drove Mr. Cicconi and [Appellant] to an alley . . . in Smock, Pennsylvania to meet Mr. Friend for the transaction. Mr. Helisek got out of the car with the [marijuana] and Mr. Friend asked if he could smell it. Mr. Friend then took the [marijuana] without paying, got in his car, and sped away.
>
> Enraged, the other three men wanted to either retrieve the [marijuana] or receive proper payment. Mr. Helisek knew where Mr. Friend lived and drove to the house. [At approximately 8:00 p.m., a]s Mr. Helisek was driving by slowly, [Appellant] began shooting from out the back seat window [toward Friend's house]. Mr. Helisek sped away.
>
> Police were summoned to the residence and began an investigation of the crime scene.

Trial Court Opinion, 7/31/18, at 2.

Meanwhile, 16 people, including 7 children, were present at Friend's house for Friend's 26th birthday party. Two women, Samantha Hall and Abigail Hoffman, were on the porch.

> At that time, Ms. Hall saw a four-door sedan driving slowly down the street[.] She saw the rear window on the driver's side was down. The next thing she noticed was muzzle fire—red flames—coming from the rear window on the driver's side.
>
> As gunshots started ringing out, Ms. Hall fell to the ground.

- 2 -

Ms. Hoffman stood motionless, so Ms. Hall grabbed her and pulled her to the ground as well. They huddled there until the gunshots ended.

Ms. Hall also testified [at trial] that the car was about 30 yards away, and that the porchlight was on. . . . Three rounds of bullets hit the porch. They were three-to-four inches above where Ms. Hall and Ms. Hoffman were standing. Ms. Hall testified that she if she hadn't pulled Ms. Hoffman down, Ms. Hoffman would have been killed, as the rounds that entered the porch were right at the chest and head level of where they had been standing.

Trial Court Opinion, 7/31/18, at 9-10, *citing* N.T., 2/1/18, at 39-43. Additionally, Friend's mother, who was inside the house, "testified that lights were on in the house, that people were going in and out," the gunshots shattered the windows, and one bullet "struck the kitchen freezer, which partygoers had been using just moments before the shooting began." *Id.* at 11, *citing* N.T., 2/1/18, at 22. Friend's mother "had to be pulled down by another son when the shooting started." *Id.*, *citing* N.T., 2/1/18, at 19.

After the shooting, Helisek exchanged telephone calls with someone — Helisek could not recall who — who stated that they would return the marijuana if Helisek returned. N.T., 2/1/18, at 127.

The three men returned later that night to [Friend's] house—this time in [Appellant's] car—with the hopes of retrieving the [marijuana]. Upon arrival near the residence, the three got out of the car but were shot at by a rifle. They quickly got back in [Appellant's] car and sped away. Eventually, [Appellant] got his vehicle stuck in a snow bank, and was later found by police and arrested that night.

Trial Court Opinion, 7/31/18, at 2. At the time of his arrest, Appellant had gunshot residue on his hands. *Id.* at 8, *citing* N.T., 4/1/18, at 337. The police

- 3 -

recovered two handguns, including a Glock 23, clips, and a box of shells in the area where Appellant's car had stopped. Trial Court Opinion, 7/31/18, at 8, *citing* N.T., 4/1/18, at 235-238. An "eTrace weapons search" revealed that Appellant had purchased the Glock 23 gun and that casings recovered from the scene were fired from the Glock 23. *Id.*, *citing* N.T., 4/1/18, at 236, 329.

Appellant was charged with 16 counts each of attempted homicide, aggravated assault, and REAP, and one count of discharging a firearm into an occupied structure. The case proceeded to a two-day bench trial on April 2, 2018. Helisek testified that when he drove to Friend's house, Appellant sat behind him, and Cicconi was in the front passenger seat. N.T., 2/1/18, at 122-123. They planned to go inside the house, but as Helisek passed the front of Friend's house, Helisek heard gunshots fired from behind him, in the direction of the house. *Id.* at 123-124. Helisek also testified that he entered into a plea deal with regard to his own charges. *Id.* at 132. Helisek pled guilty to REAP and received a sentence of two years of probation, and in exchange, agreed to testify at Appellant's trial. *Id.* at 132. Appellant did not testify or present any evidence.

The trial court found Appellant guilty of two counts of attempted homicide with respect to Hall and Hoffman; 16 counts of aggravated assault and REAP, for all 16 occupants at Friend's house; and one count of discharging a firearm into an occupied structure. On April 24, 2018, the trial court sentenced Appellant to an aggregate 5 to 10 years in prison, comprised of:

- 4 -

(1) two concurrent terms of 5 to 10 years for the two attempted homicide convictions; and (2) a concurrent term of 3 to 6 years for discharging a firearm. Appellant did not file a post-sentence motion.

On May 22, 2018, Appellant's privately-retained counsel filed a motion to withdraw from representation, along with a notice of appeal, the latter of which was signed by Appellant only. On May 25th, the trial court granted counsel's motion to withdraw, appointed the Fayette County Public Defender's Office to represent Appellant, and directed Appellant to file a Pa.R.A.P. 1925(b) statement. Thereafter, Appellant's current counsel filed a statement, raising a single issue challenging the sufficiency of the evidence.

On July 12, 2018, this Court issued a *per curiam* order, noting that Appellant's notice of appeal was filed *pro se* and directing the trial court to conduct a **Grazier** hearing to determine whether Appellant intended to proceed *pro se*. **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). The trial court responded that it had allowed Appellant's trial counsel to withdraw and had appointed the public defender to represent Appellant. On July 27th, this Court entered an order noting that Appellant had counsel. As noted above, the trial court filed an opinion on July 31, 2018.

On appeal, Appellant presents one issue for our review:

> WAS THE EVIDENCE LEGALLY AND FACTUALLY INSUFFICIENT TO SHOW THAT [APPELLANT] COMMITTED THE CRIMES?

Appellant's Brief at 7. Appellant summarily argues:

> The case came down to one witness, Zach Helisek. An individual

- 5 -

who testified based on his own self-preservation. He would say anything to stay out of jail. He admitted to smoking marijuana and [consuming] a large quantity of alcohol before going to make a drug deal. He admitted he was not forthcoming to the police. It was not until the Commonwealth drop[ped] all charges but one [that] he testif[ied] as he did.

*Id.* at 13-14.

At the outset, we consider Appellant's court-ordered Rule 1925(b) statement, which reads, in entirety: "Was the evidence insufficient to find the Appellant guilty beyond a reasonable doubt of the criminal charges?" Appellant's Concise Issue, 6/5/18. The trial court has suggested that this statement so lacked any specificity that Appellant has waived his issue on appeal. Trial Court Opinion, 7/31/18, at 3-5. We agree. The trial court correctly noted that a Rule 1925 statement must concisely identify each ruling or error with sufficient detail to identify all pertinent issues for the trial court, and that this Court has found waiver where a Rule 1925(b) statement read: "The evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that [Appellant] was guilty of Robbery." *See* Trial Court Opinion, 7/31/18, at 3, *citing* Pa.R.A.P. 1925(b)(4); *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011). As noted above, Appellant was convicted of two counts of attempted homicide, sixteen counts each of aggravated assault and REAP, and one count of discharging a firearm, all of which are comprised of discrete elements. The Rule 1925(b) statement in *Hansley* only specified the offense of robbery, and not any of its elements; here, Appellant has not even identified his four convictions. Accordingly, and

- 6 -

consistent with the applicable legal authority, we conclude that Appellant's issue is waived. **See** Pa.R.A.P. 1925(b)(4); **Hansley**, 24 A.3d at 415.

Moreover, even if Appellant had presented an adequate Rule 1925(b) statement, we would conclude that his issue was waived for a similarly deficient brief. This Court has stated:

> The Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. **See** Pa.R.A.P. 2119. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim. Further, this Court will not become counsel for an appellant and develop arguments on an appellant's behalf. It [is an appellant's] responsibility to provide an adequately developed argument by identifying the factual bases of his claim and providing citation to and discussion of relevant authority in relation to those facts. [If he] has failed to do so, [his] issue waived.
>
> . . . In order to develop a claim challenging the sufficiency of the evidence properly, an appellant must specifically discuss the elements of the crime and identify those which he alleges the Commonwealth failed to prove. [If he] has failed to do so . . . he has waived this claim for lack of development.

**Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa. Super. 2014) (citations omitted). A claim that the Commonwealth's evidence was incredible goes to the weight, not the sufficiency, of the evidence. **Id.**

Despite the trial court's admonishment regarding the lack of specificity in his Rule 1925(b) statement, Appellant has presented this Court with a brief which fails to identify his four convictions and their statutory elements. The sole allusion to the convictions appears in the statement of the case, where Appellant mistakenly recounts that he "was charged with Involuntary [sic]

- 7 -

Criminal Attempt to Commit Homici[de], et al." Appellant's Brief at 8. Appellant's brief makes no mention of aggravated assault, REAP, or discharging a firearm into an occupied structure, fails to set forth the statutory elements of his crimes, and does not identify which particular elements were allegedly unproven. Further, Appellant does not include, contrary to the requirements of Pa.R.A.P. 2117(a)(4), "[a] closely condensed chronological statement . . . of all the facts which are necessary to be known in order to determine the points in controversy[.]" *See* Pa.R.A.P. 2117(a)(4). Thus, we would further conclude that Appellant has waived his issue "for lack of development." *Samuel*, 102 A.3d at 1005.

In any event, our review reveals that no relief would be due. Appellant generally asserts that Helisek "testified based on his own self-preservation" and would have said "anything to stay out of jail." *See* Appellant's Brief at 13. He also points out, without further discussion, that Helisek drank alcohol and smoked marijuana on the day of the shootings. This challenge to the veracity of Helisek's testimony goes to the weight of the Commonwealth's evidence, not its sufficiency. *See Samuel*, 102 A.3d at 1005. We would find this claim waived for Appellant's failure to raise it before the trial court. *See* Pa.R.Crim.P. 607(A)(1)-(3) (claim that the verdict was against the weight of the evidence shall be raised before or after sentencing).

Also, even if a weight claim were properly before us, we note that Helisek acknowledged at trial that he had pled guilty to REAP and received a

sentence of 2 years of probation in exchange for his testimony.  *See* N.T., 2/1/18, at 132.  The trial court, who was the finder of fact, opined that it accepted Helisek's testimony identifying Appellant as the person who sat behind him in the car and fired a gun toward Friend's house.  Trial Court Opinion, 7/31/18, at 7.  The court was free to believe Helisek's testimony and weigh it accordingly.  *See Hansley*, 24 A.3d at 416 ("[T]he [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.").  The court reasoned that the evidence at trial established that Appellant committed attempted homicide, 18 Pa.C.S.A. §§ 901(a), 2501(a), where the requisite specific intent to kill could be inferred from Appellant's use of a deadly weapon upon a vital part of the bodies of Hall and Hoffman, who were the two women on the porch.  Trial Court Opinion, 7/31/18, at 6, 9-10, *citing Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa. Super. 2004) ("For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill."); *Commonwealth v. Hobson*, 604 A.2d 717 (Pa. Super. 1992) ("A jury may properly infer an intent to kill from the use of a deadly weapon on a vital part of the victim's body.").  The court further reasoned that the Commonwealth's evidence that Appellant fired a gun into a home with 16 people inside established discharge of a firearm into an occupied structure, 18 Pa.C.S.A. § 2707.1(a) (knowingly, intentionally or recklessly discharging a firearm from any location into an occupied structure) and 16 counts each of

aggravated assault, 18 Pa.C.S.A. § 2702(a)(1) (attempting to cause serious bodily injury to another), and REAP, 18 Pa.C.S.A. § 2705 (recklessly engaging in conduct which places another person in danger of death or serious bodily injury).

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2018