J-S28044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
REYNOLD G. HENRY :
:
Appellant : No. 1165 MDA 2024

Appeal from the PCRA Order Entered July 3, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004042-2017

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 16, 2025**

Appellant, Reynold G. Henry, appeals from the order entered in the Berks County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows:

> In the early evening hours of July 18, 2017, fourteen-year-old Bruce Cridell, Jr. [("Cridell")] came to Reading from his home in York, Pennsylvania.  The purpose of the trip was to buy a gun from ... 23-year-old [Appellant].  The young, albeit streetwise, Cridell was able to get a ride with some friends.  The driver of the vehicle was Diana Gonzalez [("Gonzalez")].  Also along for the ride was ... Cridell's friend, 19-year-old Saul Ortiz [("Ortiz")].  Throughout the trip from York to Reading, numerous text messages were sent back and forth between ... Cridell and [Appellant].  Some of these texts were in the form of negotiations for the price of the handgun.  In addition to the negotiations,

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[Appellant] sent a video of the gun to [Cridell]. Unbeknownst to ... Cridell, [Appellant] had been separately texting another friend about a plan to keep the gun and take the money from his unsuspecting, youthful buyer.

Upon arriving in Reading, ... Gonzalez drove to the McDonald's restaurant located at 1001 North 9th Street. This was the meeting place that had been pre-arranged between ... Cridell and [Appellant]. The time was now approximately 6:30 p.m. Once in the parking lot, ... Cridell got out of the vehicle and, against the previously texted wishes of [Appellant], he had ... Ortiz accompany him to meet [Appellant] just inside the doorway of the McDonald's.

[Appellant] immediately led [Cridell] and ... Ortiz away from McDonald's on foot. A little less than one (1) hour later, video cameras show [Appellant] leading ... Cridell and ... Ortiz into an alleyway. This alleyway is only three (3) blocks away from the McDonald's parking lot and it connects the 900 block of Mulberry Street, video surveillance shows the three individuals walk halfway through the alley. At the halfway point, [Appellant] makes a left onto an intersecting alleyway called "Market Place." [Cridell] turns to follow [Appellant]. Within one second of ... Cridell walking out of view of the video towards [Appellant], shots are fired. [Ortiz]—still in full view—ducks, turns and runs back towards Mulberry Street. Video then captures [Appellant] running south[,] away from the scene. Back on Mulberry Street, video captures ... Ortiz coming out of the alleyway and across the street to talk to a local resident. As ... Ortiz and the local resident look north towards the alleyway entrance, 14-year-old ... Cridell can be seen stumbling out of an alleyway several houses south of where ... Ortiz is looking. [Ortiz] never sees his friend, [Cridell], falling off the curb and onto the street. As ... Ortiz starts his walk back towards the McDonald's, ... Cridell dies from a single shot that entered the top of his left shoulder, passing though the left carotid artery and trachea, finally stopping at his right collarbone.

The following day, [Appellant] was arrested and brought to City Hall for an interview, during which he offered two versions of what occurred. After additional investigation, [Appellant] was criminally charged with murder of the first

degree, murder of the third degree, two (2) counts of aggravated assault, firearms not to be carried without a license, [PIC], and persons not to possess a firearm.

*Commonwealth v. Henry*, No. 103 MDA 2021, unpublished memorandum at 2-4 (Pa.Super. filed Oct. 21, 2021), *appeal denied*, 672 Pa. 694, 276 A.3d 198 (2022) (quoting Trial Court Opinion, 5/12/21, at 1-3) (unnecessary capitalization and footnotes omitted).

> [O]n September 7, 2018, the Commonwealth filed a motion to amend the criminal information to include the charge of murder in the second degree.[8]  A full evidentiary hearing was held on the Commonwealth's motion on October 24, 2018.  During this hearing, the Commonwealth presented cell phone data that retrieved from the victim and [Appellant].  This data revealed that, while the victim was *en route* to the City of Reading to purchase a gun from [Appellant], [Appellant] was having separate conversations showing that he intended to rob the victim rather than sell him a gun.  [Appellant] was present during this entire hearing.  (*See* N.T. Hearing, 10/24/18).
>
> [8] 18 Pa.C.S.A. § 2502(b).
>
> At the conclusion of the hearing to amend the Criminal Information, [the trial] court concluded that the Commonwealth presented sufficient evidence to establish a *prima facie* case that the murder of the victim had been committed during the felony offense of robbery.  The Commonwealth's motion to amend the information to include second degree murder was summarily granted. Immediately thereafter, [Appellant] was arraigned by the court and the amended information was filed.
>
> *    *    *
>
> A jury trial commenced on Monday, November 16, 2020. During the trial, numerous witnesses were called to testify for the Commonwealth.  Notably, Saul Ortiz testified and his testimony of the events that occurred proved to be particularly similar to what was seen on the video cameras.

> Also testifying for the Commonwealth were two witnesses — Joel Perdomo-Velez and Jerel Guzman — both of whom testified that [Appellant] admitted that he intended to rob the victim as opposed to selling him a gun. (N.T. Trial, 11/16-20/20 at 240, 258-59).
>
> [Appellant] testified on his own behalf and, for the very first time, presented a self-defense claim that he admitted had not been told to police on prior occasions. [Appellant] testified that he fired a pistol three times in the alley and that he lied to police during previous encounters. (***Id.*** at 107, 371-72, 375).

(PCRA Court Opinion, 7/3/24, at 3-4) (unnecessary capitalization omitted; citation formatting provided).

On November 19, 2020, a jury found Appellant guilty of murder of the second degree, aggravated assault—bodily injury with a deadly weapon, firearms not to be carried without a license, and possessing instruments of crime. On January 12, 2021, prior to sentencing, Appellant pled guilty to persons not to possess a firearm. Thereafter, the court imposed a total aggregate sentence of life imprisonment followed by a maximum of thirty-two years' imprisonment.

This Court affirmed Appellant's judgment of sentence on October 21, 2021, and our Supreme Court denied Appellant's petition for allowance of appeal on April 5, 2022. ***See Henry, supra***. On July 5, 2023, Appellant filed the instant timely first PCRA petition.[2]

---

[2] Appellant's judgment of sentence became final on July 4, 2022, ninety days after our Supreme Court denied his petition for allowance of appeal and the

*(Footnote Continued Next Page)*

The PCRA court conducted an evidentiary hearing on January 18, 2024, after which it permitted Appellant to amend his petition to include an additional claim. On July 3, 2024, the PCRA denied Appellant's PCRA claims. Appellant timely filed a *pro se* notice of appeal on July 29, 2024.[3] Pursuant to the court's order, Appellant filed his concise statement of errors complained of on appeal on August 29, 2024.

On September 21, 2024, retained counsel, Lonny Fish, Esquire, filed an application to withdraw as counsel with this Court, explaining that Appellant

_____

time for which Appellant to file a petition for writ of *certiorari* with the United States Supreme Court elapsed. **See** 42 Pa.C.S.A. § 9545(b)(3). **See also** U.S.Sup.Ct.R. 13 (providing 90 days to file petition for writ of *certiorari* with Supreme Court). Thus, Appellant had one year from that date to file a timely PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1). Therefore, Appellant's petition, filed on July 5, 2023 (the day after the July 4th court holiday), was timely.

[3] Because Appellant was incarcerated when he submitted this filing, we use the mailing date listed on the certificate of service for his notice of appeal as the operative filing date. **See Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa.Super. 2011) (explaining that under "prisoner mailbox rule," we deem *pro se* document filed on date it is placed in hands of prison authorities for mailing). Appellate counsel filed a notice of appeal on Appellant's behalf on August 5, 2024, which was untimely. This Court docketed the untimely appeal at 1102 MDA 2024 and later marked it as discontinued. Because appellate counsel failed to file a timely notice of appeal, we accept Appellant's *pro se* filing as the operative notice of appeal here. **See Commonwealth v. T. Williams**, 241 A.3d 353, 355 (Pa.Super. 2020) (stating: "this Court has recognized that a counseled defendant may act on his own to protect important rights where counsel remains technically attached to the case but is no longer serving the client's interest"); **Commonwealth v. H. Williams**, 151 A.3d 621, 624 (Pa.Super. 2016) (explaining that because notice of appeal protected constitutional right, it is distinguishable from other types of filings and this Court is required to docket *pro se* notices of appeal despite fact that appellant is represented by counsel).

wanted to raise a claim of Attorney Fish's ineffectiveness. On December 2, 2024, this Court granted Attorney Fish's application to withdraw and remanded this matter to the PCRA court for the purpose of ascertaining whether Appellant was entitled to appointed PCRA counsel. By order dated January 28, 2024, the PCRA court found that Appellant was eligible for PCRA counsel and appointed Douglas Waltman, Esquire, to represent Appellant in this appeal.

On April 14, 2025, Attorney Waltman filed an application to withdraw as counsel with this Court, stating that Appellant wanted to represent himself on appeal. This Court subsequently directed the PCRA court to conduct an on-the-record determination as to whether Appellant was knowingly, intelligently, and voluntarily waiving his right to counsel. After a **Grazier**[4] hearing, the PCRA court found that Appellant wished to continue to be represented by Attorney Waltman. Thereafter, on June 6, 2025, Attorney Waltman filed a no-merit brief and another application to withdraw as counsel with this Court.[5] Appellant did not file a response to counsel's petition to withdraw.

---

[4] **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998).

[5] Counsel designated his no-merit brief as one per **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), which applies to attorneys seeking to withdraw representation on direct appeal. We can accept counsel's filing in this case as a **Turner**/**Finley** brief. **See Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (en banc). **See also Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa.Super. 2011) (stating: "Because an **Anders** brief
*(Footnote Continued Next Page)*

Before counsel can be permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law requires counsel to file a "no-merit" brief or letter pursuant to *Turner*/*Finley*. *Commonwealth v. Karanicolas*, 836 A.2d 940, 947 (Pa.Super. 2003).

> [C]ounsel must ... submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa.Super. 2007). Counsel must also send to the petitioner a copy of the "no-merit" letter or brief and motion to withdraw and advise petitioner of his right to proceed *pro se* or with privately retained counsel. *Id.* "Substantial compliance with these requirements will satisfy the criteria." *Karanicolas, supra* at 947.

Instantly, appellate counsel filed a motion to withdraw as counsel and submitted a no-merit brief detailing the nature of counsel's review and explaining why Appellant's claims lack merit. Counsel's brief also demonstrates he reviewed the certified record and found no meritorious issues for appeal. Counsel notified Appellant of counsel's request to withdraw and advised Appellant regarding his rights. Thus, counsel substantially complied with the *Turner*/*Finley* requirements. *See Wrecks, supra*; *Karanicolas,*

---

provides greater protection to a defendant, this Court may accept an *Anders* brief in lieu of a *Turner*/*Finley* letter").

***supra***. Accordingly, we proceed with our independent evaluation of the record. ***See Turner, supra*** at 494-95, 544 A.2d at 928-29 (stating appellate court must conduct independent analysis and agree with counsel that appeal is frivolous).

Counsel raises the following issues on Appellant's behalf:

> A. Whether the [PCRA] court reversibly erred in denying the PCRA claim that the relevant predicate felony for Murder in the Second Degree, to wit: Robbery, did not appear on the Bill of Information thereby invalidating the conviction?
>
> B. Whether the [PCRA] court reversibly erred in denying the PCRA claim that trial counsel was ineffective for failing to "allow" the court to instruct the Jury appropriately regarding Murder in the Second Degree?
>
> C. Whether the [PCRA] court reversibly erred in denying the PCRA claim that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding the charge of robbery where robbery did not appear on the Bill of Information?
>
> D. Whether the [trial] court reversibly erred by improperly defining robbery in jury instructions?
>
> E. Whether the [PCRA] court reversibly erred in denying the PCRA claim that trial counsel was ineffective for failing to ensure that the court properly instructed the jury with standard jury instruction "15.2502B" relating to "a break in the chain of events"?

(No-Merit Brief at 1-2).[6]

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA

---

[6] Appellant has not filed a responsive brief, either *pro se* or with new counsel.

court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, 672 Pa. 30, 268 A.3d 386 (2021). Further, where the PCRA court makes credibility determinations, we are bound by them if they are supported by the record. *Commonwealth v. Mojica*, 242 A.3d 949, 953 (Pa.Super. 2020), *appeal denied*, 666 Pa. 290, 252 A.3d 595 (2021).

Pennsylvania law presumes counsel has rendered effective assistance. *Commonwealth v. K. Williams*, 597 Pa. 109, 117 n.3, 950 A.2d 294, 299 n.3 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *K. Williams, supra*.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis

for the assertion of ineffectiveness is of arguable merit…" ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004). "Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." ***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [***Kimball, supra***], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

In the first two issues raised by counsel on Appellant's behalf, Appellant contends that he was improperly convicted of second-degree murder where the bill of particulars did not identify robbery as the underlying predicate offense for the charge of second-degree murder. Appellant argues that because the predicate felony was incorrectly listed as "murder in the second

degree" and not "robbery" on the charging document, the trial court erred by allowing the jury to consider any testimony concerning a robbery. Appellant insists that trial counsel was ineffective for failing to object to the error in the bill of particulars and for allowing such evidence to be presented to the jury. Appellant concludes the PCRA court erred by denying his PCRA petition on these grounds, and this Court must grant relief. We disagree.

Initially, we note that although Appellant refers to a "bill of particulars," there was no bill of particulars in this case. Rather, Appellant was charged by a criminal information. Thus, any specific rights and relief that are available solely after a bill of particulars has been submitted are inapplicable.[7]

The purpose of a criminal information is to provide the defendant with sufficient notice of the charges against him in order to prepare a defense, and to ensure that he will not be tried twice for the same act. ***Commonwealth v. Bickerstaff***, 204 A.3d 988, 995 (Pa.Super. 2019), *appeal denied*, 655 Pa. 509, 218 A.3d 862 (2019) (citation omitted). "[A] criminal information satisfies the constitutional requirements, under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania

_____

[7] A bill of particulars is a procedural tool that allows a defendant to request more specific details about the charges contained in the criminal information. It is not a formal charging document and does not become part of the criminal information or indictment. The comment to Pa.R.Crim.P 572 (governing bill of particulars) explains that "[t]he traditional function of a bill of particulars is to clarify the pleadings and to limit the evidence which can be offered to support the information." Pa.R.Crim.P. 572, *Comment*.

Constitution, that a defendant be given formal, specific notice of the charged crimes." ***Commonwealth v. Nischan***, 928 A.2d 349, 356 (Pa.Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

Pennsylvania Rule of Criminal Procedure 560 provides, in relevant part, that a criminal information is sufficient if it contains "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint[.]" Pa.R.Crim.P. 560(B)(5). Rule of Criminal Procedure 564 governs the amendment of a criminal information, and provides that "[t]he court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced." Pa.R.Crim.P. 564. "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa.Super. 2006) (citation omitted).

"[T]he charging instrument must include those elements to put the defendant on notice of the crime." ***Commonwealth v. King***, 660 Pa. 482, 503-04, 234 A.3d 549, 562 (2020). "Informations must be read in a common sense manner and are not to be construed in an overly technical sense. The purpose of the information is to provide the accused with sufficient notice to

prepare a defense, and to ensure that he will not be tried twice for the same act." ***Bickerstaff, supra*** at 995 (citation omitted).

Instantly, the PCRA court explained that "trial counsel never requested any [b]ills of [p]articular in which he sought clarifying information. Accordingly, [Appellant's] reliance on the factually inaccurate use of a [b]ill of [p]articular is akin to a legal nullity, as no such [b]ills of [p]articular were ever requested in this case." (PCRA Court Opinion, 7/3/24, at 13). The PCRA court explained that because a bill of particulars was not requested, the limitation of testimony was not a form of relief that would be warranted, and Appellant failed to establish the first prong of his claim of counsel's ineffectiveness.

However, the PCRA court agreed with Appellant that the amended criminal information did contain an error as it did not list robbery as the predicate offense for murder in the second degree. Accordingly, the court evaluated whether Appellant suffered prejudice as a result of this error. The PCRA court determined that Appellant did not suffer prejudice, explaining:

> Not long after the Commonwealth sought to amend the information to include murder of the second degree, this court scheduled a full hearing that was held on October 24, 2018. The scope of that hearing was to ascertain whether sufficient evidence existed to prove that the murder of the victim was committed during a felony; more specifically, a Robbery. During that lengthy hearing, [Appellant] was present the entire time and was ultimately arraigned on the new charge. During that hearing, [Appellant] was represented by Attorney Kevin Feeney. Attorney Feeney was later replaced by trial counsel, Jay M. Nigrini, Esq. At the PRCA hearing that was conducted on January 18, 2024, the following testimony was elicited from Attorney Nigrini by the Commonwealth:

Q: Okay. When you got into the case, were you aware of what charges [Appellant] was facing?

A: Yes.

Q: Were you aware that the underlying charge on the second degree murder was robbery?

A: Yes.

Q: In your preparation for this case, did you review the discovery material that the Commonwealth provided you?

A: Yes.

Q: Based upon that discovery material, were you aware that the underlying charge was robbery?

A: Yes.

Q: Was there any indication that there was any other charge that was the underlying factor in the second degree murder?

A: No.

Q: Did you have any conversations with [Appellant] about the underlying robbery in this case?

A: Yes.

Q: On more than one occasion?

A: Yes.

Q: Was there any doubt in your mind that he was aware that robbery was the underlying offense in this case?

A: No.

(N.T. PCRA Hearing, 1/18/24, at 19-20).

> Based on [Appellant's] attendance at the hearing to amend the information, together with trial counsel's testimony, … the variance between the charge listed in the amended criminal information and the evidence produced at trial was not so fatal to the conviction as it did not mislead [Appellant] at trial; it did not involve an element of surprise prejudicial to [Appellant's] efforts to prepare his defense; it did not preclude [Appellant] from anticipating the prosecution's proof, nor did it impair a "substantial right." ***Commonwealth v. Jones***, [590 Pa. 202, 238, 912 A.2d 268, 289 (2006)].
>
> The only question that remains is whether the plain error in the pleadings warrants [Appellant] any relief. [The PCRA court concluded] that it does not. This case involves a typographical error. In reviewing the substantive caselaw, the central question comes down to – once again – whether [Appellant] suffered any prejudice by the clerical error…. Based on a thorough review of the law and the entire record, [the PCRA court] conclude[d] that [Appellant] suffered absolutely no prejudice from the typographical error and, as a result, the instant situation does not rise to the level of plain error that would warrant any form of relief under the [PCRA.]

(PCRA Court Opinion, 7/3/24, at 14-15) (some capitalization omitted).

We agree with the PCRA court, and the conclusion of appointed appellate counsel, that there is no arguable merit to Appellant's claims of ineffective assistance of counsel based on the errors in the "bill of particulars" because there was not a bill of particulars requested in this matter.

Furthermore, even if we were to construe Appellant's claims as challenging the validity of the amended criminal information charging him with second degree murder, we agree with the PCRA court that Appellant was not prejudiced by the error on the information. We reiterate that the purpose of

a criminal information is to inform a defendant of the charges against him so that he is not surprised and may prepare a defense. *See Bickerstaff, supra*. As the PCRA court explained, the record reveals that Appellant understood the second-degree murder charge was based on Appellant killing the victim while committing the felony of robbery. Indeed, we note that at the beginning of the October 24, 2018 hearing on the Commonwealth's motion to amend the information, the prosecutor specifically explained that based on text messages recovered, the Commonwealth believed that this case arose from "a robbery rather than the sale of a gun, which is what we believed it was originally about. And if that's the case it would support the charge of second-degree murder." (N.T. Hearing, 10/24/18, at 3). Appellant has not established that counsel's errors were so serious as to deprive him of a fair trial and therefore cannot meet the prejudice requirement for his claim of ineffective assistance of counsel. *See Chambers, supra*. Accordingly, Appellant is not entitled to relief on his first two issues.

In his final three issues which appellate counsel raises on Appellant's behalf, Appellant reiterates the argument that he was not properly charged with robbery as the predicate offense to second-degree murder and argues that the trial court should not have instructed the jury on same. Appellant also maintains that the trial court's instructions improperly defined robbery, and that the court erred by not instructing the jury under a portion of Pennsylvania Suggested Standard Criminal Jury Instruction 12.2505B, which

describes the legal consequences of a break in the chain of events between the predicate felony and the murder itself. Based upon the foregoing, Appellant concludes that he is entitled to relief based on trial counsel's ineffectiveness. We disagree.

This Court has set forth the relevant standard for jury instructions as follows:

> A trial court has wide discretion in phrasing jury instructions. When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle.

*Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004) (quoting *Commonwealth v. Ragan*, 560 Pa. 106, 120-21, 743 A.2d 390, 397 (1999)). *See also Commonwealth v. Lesko*, 609 Pa. 128, 216, 15 A.3d 345, 397 (2008) (reiterating that charge, "as a whole," must be considered and court has broad discretion in phrasing instructions, so long as directions given "clearly, adequately, and accurately" reflect law); *Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa.Super. 2007), *appeal denied*, 594 Pa. 676, 932 A.2d 1286 (2007) (explaining that where language used by trial court closely tracks language of Pennsylvania Standard Criminal Jury Instructions, "it is presumed that such instructions are an accurate statement of the law").

The Pennsylvania Suggested Standard Criminal Jury Instructions suggest the following language to instruct the jury on the charge of second-degree murder:

[1. I will start with some terminology and basic principles. The more serious types of crimes are called felonies. For example, [type of crime] is a felony. Second-degree murder is often called felony-murder because it is a killing connected with a felony. [The felon need not intend to kill anyone or anticipate that anyone be killed. The person killed can be someone other than a victim of the felony. He or she need not die immediately; he or she may die much later and at a different place.] [give other specific details].]

2. The defendant has been charged with second-degree murder, that is, felony murder. To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:

First, that the defendant [killed] [caused the death of] [name of victim];

Second, that the defendant did so while [committing] [attempting] [fleeing after committing] [fleeing after attempting] a certain [specific crime]; and

Third, that the defendant was acting with malice. You may find that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that [he] [she] [committed] [attempted] the [specific crime]. Because [specific crime] is a crime inherently dangerous to human life, there does not have to be any other proof of malice.

[3. I will now define [specific crime]: [definition].]

[4. A defendant kills "while fleeing" if he or she does the act that kills during his or her flight from the scene and there is no break in the chain of events between the felony and the killing.]

Pa.S.S.J.I. (Crim.) § 15.2502B (First alternative: Defendant felon acting alone).

- 18 -

Here, the trial court instructed the jury on second-degree murder as follows:

> Second degree murder. I want to start with some terminology and basic principles. The more serious types of crimes are called felonies. For example, robbery is a felony. Second degree murder is often called felony murder because it is a killing connected with a felony. The felon, person committing the felony, need not intend to kill anyone or anticipate that anybody would be killed. The person killed can be someone other than the victim of the felony. He or she – the defendant – I'm sorry. The defendant has been charged with second degree murder, that is felony murder. To find the defendant guilty of second degree murder, you must find that the following three elements have been proven beyond a reasonable doubt. First, that the defendant killed or caused the death of Bruce Cridell, Jr. Second, that the defendant did so while committing or attempting to commit or fleeing after committing a robbery. Third, that the defendant was acting with malice. You may find that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that he committed or attempted to commit the felony charge. Here the felony charge is robbery because robbery is a crime inherently dangerous to human life; and therefore, there does not need to be any other proof of malice. A defendant kills while fleeing if he does so – if he does the act that kills someone during his flight from the scene. If you're satisfied that the elements of second degree murder have been proven beyond a reasonable doubt, you should find the defendant guilty. However, if you are not satisfied beyond a reasonable doubt, you must find the defendant not guilty.

(N.T. Trial, 11/19/20, at 445-46).

In evaluating Appellant's PCRA claims, the PCRA court found that the trial court accurately instructed the jury on the relevant law. The court explained:

> [T]he charge to the jury on Second Degree Murder is a virtual recitation of Standard Jury Instruction 15.2502(B).

- 19 -

[Appellant] argues that the court omitted the fourth segment in its entirety, however such is not the case. We do agree with [Appellant], however, that the final phrase in the fourth segment was omitted, to wit: "and there is no break in the chain of events between the felony and the killing." This is the crux of [Appellant's] argument. [Appellant] is of the opinion that if the court included this phrase, or if counsel objected to ensure that it was included, the jury would have been permitted to find [Appellant] not guilty of Second Degree Murder. In viewing this argument in its totality — which we must — we do not find that an error was committed and, consequently, we do not find that counsel was ineffective for failing to ensure, through objection or otherwise, that the final phrase was included. Accordingly, we find that [Appellant's] final substantive claims are without merit and must be denied.

(PCRA Court Opinion, 7/3/24, at 17). The court further reasoned that the evidence at trial did not support an instruction concerning a break in the chain of events. The court explained that at trial,

Saul Ortiz provided detailed testimony about how both he and the victim followed [Appellant] through the streets of Reading as [Appellant] spouted his bogus claims that he would locate a gun to sell to the victim. Saul Ortiz described in detail how the situation started to become hostile as the victim grew more impatient with [Appellant's] efforts to obtain a gun to sell the victim, and how [Appellant] finally convinced them to follow him down an alleyway in a final effort to locate a gun which, unbeknownst to Mr. Ortiz or the victim, [Appellant] had hidden in his waistband the entire time. Perhaps most telling about the testimony of Saul Ortiz was his precise description of the victim being shot without provocation or delay, immediately upon the victim turning to follow [Appellant] down the smaller alley.

(*Id.* at 18). The court further noted that the surveillance video introduced by the Commonwealth "unequivocally showed absolutely no break in the chain of events between [Appellant] pulling out his hidden pistol and the shots that

flew past Saul Ortiz and the shot that penetrated the victim and killed him in a matter of a few minutes." (*Id.* at 18-19). Thus, the PCRA court concluded that there was no evidence suggesting any break in the chain of events, and the court's instruction to the jury was proper. Finding that the underlying claims lacked arguable merit, the PCRA court dismissed Appellant's final ineffectiveness claims.

Upon our review of the record, we agree with the PCRA court's conclusion that the entire jury charge clearly and accurately represented the relevant legal concepts to the jury. *See Geathers, supra*. When read as a whole, the court's instructions, which were in parity with the suggested standard jury instructions, accurately conveyed what the Commonwealth was required to prove for Appellant to be found guilty of second-degree murder and that all elements must be proven beyond a reasonable doubt. *See* 18 Pa.C.S.A. § 2502(b); *Kerrigan, supra*. As discussed in our analysis of Appellant's earlier appellate issues, Appellant had notice and was aware of the second-degree murder charge, with robbery as the predicate offense, at the time the criminal indictment was amended. Thus, the court did not err in instructing the jury that robbery was the predicate offense for second-degree murder. Furthermore, we agree with the PCRA court that instructing the jury regarding a break in the chain of events would not have been appropriate given the evidence adduced at trial. *See Geathers, supra*. Because the record supports the PCRA court's conclusion that Appellant's underlying claims

lacked merit, we agree with the PCRA court that Appellant's related ineffectiveness claims must fail. ***See Kimball, supra***. Following our independent review of the record, we agree with counsel that the appeal is frivolous. Accordingly, we affirm the PCRA court's order denying Appellant's PCRA petition and grant counsel's petition to withdraw.

Order affirmed. Petition to withdraw is granted.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025